

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2987 | **DATE** | 8/2/2002 |
| **CASE TITLE** | TAWANNA MARIE YOUNG vs. AMERITECH, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for summary judgment [41-1] is granted. Defendant's motion to strike portions of plaintiff's affidavit in opposition to defendant's motion for summary judgment [    ] is moot. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | AUG 0 5 2002 | 49 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 8/2/2002 | |
| | | date mailed notice | |
| CB courtroom deputy's initials | | PW | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAWANNA MARIE YOUNG, ) | |
| ) | |
| Plaintiff, ) | No. 01 C 2987 |
| ) | |
| v. ) | Suzanne B. Conlon, Judge |
| ) | |
| AMERITECH, INC., ) | |
| ) | |
| Defendant. ) | |

**DOCKETED**
**AUG 0 5 2002**

## MEMORANDUM OPINION AND ORDER

Tawanna Marie Young ("Young") sues Ameritech, Inc. ("Ameritech") and Oja Enterprises, Inc. ("Oja")(collectively, "defendants") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981 ("§ 1981"). Specifically, Young claims defendants reduced her pay and then terminated her employment based on her sex and race and in retaliation for opposing discrimination. The court previously dismissed the complaint against Oja with prejudice. Ameritech now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## BACKGROUND

All facts are undisputed unless otherwise noted. Young, who is an African-American woman, worked for Oja, a temporary service agency doing business as Parker Cromwell & Associates ("Parker Cromwell"). In late July or early August 2000, Parker Cromwell began providing temporary employees to work in Ameritech's Long Distance Support Center ("the Center"). Parker Cromwell general manager Suzanne Bruce was responsible for the Ameritech

1

49

account. Parker Cromwell senior staffing coordinator Maria DeSena was responsible for hiring and placing temporary employees at Ameritech.

On August 25, 2000, Parker Cromwell assigned Young to work in the Center's mailroom. Young's job duties included opening returned mail, batching mail for processing and typing addresses on mail labels. The Center's office manager Barbara Kunstman, who is a Caucasian woman, supervised Young in her temporary assignment. Kunstman reported to Mark Pell, director of the Center.

Kunstman found Young to be a "good worker" and "flexible." Kunstman told Parker Cromwell that Young "was doing a wonderful job" and her performance was "very good" and "excellent." Kunstman reported to Pell that Young was a "good employee."

In late September 2000, Kunstman asked Young to oversee the work in the mailroom. Effective October 2, 2000, Young's pay was increased from $10.00 to $11.50 per hour. According to Ameritech, Young was given the supervisory role and corresponding pay increase based on a temporary increase in the volume of work in the mailroom. According to Young, Kunstman raised her salary to reward her for her performance.

In early October 2000, Young told Kunstman that another Parker Cromwell temporary employee Joseph Scott, who is a Caucasian male, called her a "retard" and surreptitiously placed a mailing label on her back. Kunstman arranged a meeting with Young and Scott. During the meeting, Kunstman reprimanded Scott for his inappropriate and childish behavior. At Kunstman's request, Scott apologized to Young. Young was not satisfied with Kunstman's response. Young asked Kunstman to reassign Scott. Scott was not reassigned.

On October 12, 2000, Pell and Kunstman met with Bruce and DeSena to discuss Ameritech's temporary services arrangement with Parker Cromwell. The group also met with Young to discuss her complaints against Scott. During the meeting, Young reiterated her belief that Ameritech's response was insufficient. Later that day, DeSena counseled Scott about his behavior. Beginning October 16, 2000, Young's pay was reduced to $10.00 per hour.

Shortly thereafter, two African-American female employees complained to Ameritech supervisor Dina Desano that Young glared at them in the parking lot while extending both middle fingers for over 30 seconds. After Desano reported the incident to Kunstman, they spoke with Young about the complaint. Young denied the allegations. Nevertheless, Kunstman counseled Young that the alleged behavior was unacceptable. Desano warned Young that if the conduct occurred again, her assignment would be terminated.

On October 25, 2000, Young filed a charge of discrimination against Ameritech, alleging race and sex discrimination. At the time, Kunstman was on vacation. According to Young, she informed Kunstman of the charge when she returned from vacation on Monday, October 30, 2000. Kunstman denies Young told her about the charge.

While Kunstman was on vacation, Ameritech manager Margaret Kielbasa observed Young yelling at an Ameritech employee. Kielbasa reported Young's conduct to Kunstman upon her return from vacation. Kunstman then informed DeSena that she wished to terminate Young's assignment with Ameritech. DeSena confirmed Young's assignment would end on Friday, November 3, 2000.

On November 2, 2000, Scott complained to Kunstman that Young was ignoring him. When Kunstman confronted Young about her conduct, Young responded, "whatever." Kunstman

immediately ended Young's assignment. On November 3, 2000, Young filed a second charge of discrimination against Ameritech, claiming retaliation.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary judgment standard is applied with special scrutiny to employment discrimination cases because the outcome may depend on determinations of credibility and intent. *Michas v. Health Cost Controls of Illinois*, 209 F.3d 687, 692 (7th Cir. 2000).

### II. Young's Sex and Race Discrimination Claims

Title VII prohibits an employer from discharging or otherwise discriminating against an employee in the terms, conditions or privileges of employment based on the employee's sex or race. 42 U.S.C. § 2000e-2(a). "The same standards governing liability under Title VII apply to § 1981 claims." *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998). In order to prove a case of discrimination, Young must offer either direct or indirect evidence. *Pafford v.*

4

*Herman*, 148 F.3d 658, 665 (7th Cir. 1998). Young does not offer any direct evidence that Ameritech reduced her pay or terminated her employment based on her sex or race. Instead, she relies on the burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to establish her sex and race discrimination claims.

In order to establish a *prima facie* case of sex or race discrimination, Young must show: (1) she belongs to a protected class; (2) she met her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the class more favorably. *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 376 (7th Cir. 1998). If Young establishes a *prima facie* case of discrimination, the burden of production shifts to Ameritech to produce a legitimate, non-retaliatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If Ameritech sets forth a legitimate justification, the burden then shifts back to Young to prove that Ameritech's reason is a mere pretext for discrimination. *Id.* at 804.

Ameritech claims Young cannot point to any similarly situated employee who was treated more favorably. In order to establish the fourth element of a prima facie case of discrimination, Young must "show that there is someone [outside her protected class] who is directly comparable to her in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). Specifically, Young must establish the employee: (1) held the same or similar employment position; (2) had a similar employment history; and (3) engaged in similar misconduct giving rise to the employment action. *Mora v. Chicago Tribune*, 57 F.Supp.2d 626, 635 (N.D. Ill. 1999), *aff'd* 215 F.3d 1330 (7th Cir. 2000). Young fails to meet her burden.

Prior to her reduction in pay, Young was performing supervisory duties. Although Young claims Kunstman "never cut another 'temporary' employee's pay," Young fails to show the unidentified temporary employees performed similar supervisory duties. *See Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1042 (7th Cir. 1993)(supervisors not similarly situated to subordinate employees). Young likewise fails to show any temporary employee, including Scott, was involved in two separate altercations within a two week period, but was not terminated. Absent evidence that similarly situated non-African-American and/or male temporary employees were treated more favorably, Young cannot establish a *prima facie* case of sex and/or race discrimination.

### III. Young's Retaliation Claim

Title VII prohibits employers from retaliating against employees who oppose unlawful employment practices covered by Title VII. 42 U.S.C. § 2000e-3(a). The same standards apply to Young's § 1981 claim. *Gonzalez*, 133 F.3d at 1035. In order to prevail on a claim of retaliation, Young must offer either direct or indirect evidence. *Smart v. Ball State University*, 89 F.3d 437, 439 (7th Cir. 1996). Young once again relies on the burden-shifting method set forth in *McDonnell Douglas* to establish her retaliation claim.

To establish a *prima facie* case of retaliation, Young must show: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected expression and the adverse action. *Worth v. Tyler*, 276 F.3d 249, 265 (7th Cir. 2001). Ameritech contends Young's complaints prior to the filing of her charge of discrimination are not protected by Title VII.

Prior to filing a charge of discrimination, Young complained about Scott's behavior. In her complaints, Young never suggested that Scott called her a "retard" or secretly placed a mailing label

6

on her back because she is an African-American woman. Nor did she ever suggest Ameritech did not adequately respond to her complaints because of her sex or race. Therefore, Young's complaints prior to the filing of her charge of discrimination do not rise to the level of protected expression for purposes of Title VII. *See Driver v. Arbor Management, Inc.*, No. 00 C 3933, 2001 WL 1183291, at *1 (N.D. Ill. Oct. 5, 2001)("By definition, the complaints at issue are not statutorily protected expression–for that purpose the expression must at least suggest to the employer (if not state outright) that the employee reasonably believes that she is being treated in a discriminatory manner because of her race or other protected classification").

Although Ameritech concedes Young's charge of discrimination constitutes protected expression, Ameritech claims Young has not demonstrated a causal connection between the charge and her termination. Contrary to Ameritech's position, the close temporal proximity between Young's charge of discrimination on October 25, 2000 and the decision to terminate her assignment on October 30, 2000 is sufficient to establish a *prima facie* case of retaliation. *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). Therefore, the burden of production shifts to Ameritech to articulate a legitimate non-discriminatory reason for Young's termination.

Young does not dispute that Ameritech has presented a legitimate non-discriminatory reason for her termination. Indeed, Ameritech's burden of production is "quite light" and "the mere articulation of the reason . . . puts the onus back on the plaintiff to prove pretext." *Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999). Ameritech claims Young's assignment was terminated based on her inability to get along with Ameritech employees. The burden then shifts back to Young to show that Ameritech's reasons for her termination are pretextual.

7

Young may establish pretext either directly, by showing Ameritech's decision to terminate was more likely than not motivated by discriminatory reasons, or indirectly, by showing that Ameritech's reasons are unworthy of belief. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *Worth*, 276 F.3d at 265-66. "The indirect method requires some showing that (1) the defendant's explanation has no basis in fact or (2) the explanation was not the real reason, or (3) the reason stated was insufficient to warrant the termination." *Worth*, 276 F.3d at 266. Young has not presented any direct evidence of pretext. Therefore, she must show that Ameritech lied about its reasons for terminating her assignment.

Young first claims Ameritech's reasons for her termination are suspect because Kunstman denied knowing Young filed a charge of discrimination until after her termination. Response at 11-12. Although Kunstman's testimony may be called into question at trial, the court cannot resolve issues of credibility on summary judgment. *Liberty Lobby*, 477 U.S. at 255. Rather, the court accepts Young's version of events, including her claim that she told Kunstman about the charge before her termination, as true. *Id.*

Young next claims the timing of Ameritech's actions supports an inference of pretext. Specifically, Young claims her termination came just weeks after Ameritech gave her supervisory responsibilities with a corresponding increase in pay. Response at 12. In contrast to the defendants in the cases cited by Young, Ameritech was not aware of any performance deficiencies at the time Young's responsibilities and pay were increased. See *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1461 (7th Cir. 1994); *Melton v. Five Four Corp.*, No. 99 C 1274, 2000 WL 97568, at * 13 (N.D. Ill. Jan. 25, 2000). Indeed, Young was subsequently warned her behavior could lead to termination. Under these circumstances, Ameritech's decision to terminate Young is consistent with its previous

decision to increase her responsibilities and pay. *See Velasco v. Illinois Department of Human Services*, 246 F.3d 1010, 1018 (7th Cir. 2001)(temporal proximity does not create a question of fact where the plaintiff's performance is called into question prior to filing of charge of discrimination).

Young also disputes the legitimacy of the complaints leading to her termination. Response at 12-13. However, "[s]elf-serving statements do not shed any light on whether the employer honestly based its employment decision on performance-related considerations, which is the focus of our inquiry in these cases." *Adusumilli v. City of Chicago*, 164 F.3d 353, 363 (7th Cir. 1998), *quoting Dey*, 28 F.3d at 1460 (7th Cir. 1994). Young has not presented evidence that the Ameritech employees reporting her behavior harbored any discriminatory or retaliatory animus. *Dey*, 28 F.3d at 1459. Therefore, Young has ultimately failed to carry her burden of establishing pretext.

## CONCLUSION

Young has not presented any evidence that Ameritech's decisions to reduce her pay and terminate her assignment rested upon a legally forbidden ground. Ameritech is entitled to judgment as a matter of law on all claims advanced by Young.

August 2, 2002

ENTER:

Suzanne B. Conlon
United States District Judge